IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JOHNNY LYNN BAKER,

                                    Petitioner,

        v.                                                          Criminal Action No. 3:07-CR-435
                                                                    Civil Action No. 3:10-CV-762
UNITED STATES OF AMERICA,

                                    Respondent.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Johnny Lynn Baker's Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. No.

118.) Baker seeks relief due to ineffective assistance of counsel. For the reasons stated

below, the Court DENIES the Motion in its entirety without an evidentiary hearing and

issues a certificate of appealability.

> I.      **FACTUAL AND PROCEDURAL HISTORY**

>> a.   Facts

On October 31, 2006, Postal Inspector Paul Suboyu ("Suboyu"), acting in an

undercover capacity as a purveyor of child pornography, posted messages in two online

groups, called "Preteen models only" and "Sandragirl." The subject line of both messages

read "SPAM: beautiful little girls." The messages stated, in relevant part, "for secret

collection of dvd movies of young little school girls email pinksnapper@nerdshack.com for

private access if group gets closed." Suboyu received an email reply from

saboo@excite.com ("Saboo") on November 1, 2006. An email exchange between Suboyu

and Saboo ensued, during which Saboo agreed to purchase DVDs of preteen children engaged in sexual acts. When Suboyu indicated he would be interested in trading material, Saboo stated he could send Suboyu nude photos of his eleven-year-old daughter. Saboo asked that Suboyu keep the photos off the Internet. After the agreement was made, Saboo instructed Suboyu to send a package to Jack Richards, at a Midlothian, Virginia, address.

Suboyu determined all of the emails came from the same static Internet Protocol ("IP") address and, after serving a summons on Comcast Cable, learned the IP address was assigned to "John Baker" at the same Midlothian, Virginia, address. The United States Postal Service ("USPS") obtained a copy of John Baker's driver's license record and photo.

Postal Inspector M.C. Glenn Aldridge ("Aldridge") applied for a search warrant for Petitioner's residence on March 6, 2007. A magistrate issued a search warrant authorizing a search of Petitioner's home following either the controlled delivery of a U.S. mail package containing a compact diskette ("CD") of child pornography addressed to Jack Richards or refusal of the package. The controlled delivery was executed March 7, 2007. Petitioner answered the door, but refused the package. Law enforcement officers then executed the search warrant. Officers seized a Dell computer, cable modem, CDs, floppy diskettes, phone drive, two laptop computers, wireless router, digital camera, and other media items. Petitioner was subsequently indicted. He was released on bond November 14, 2007.

On February 9, 2008, Chesterfield County police officers were called to Petitioner's residence to investigate the death of Marianne Baker, Petitioner's ex-wife who lived in his guest room. It was determined that Marianne Baker committed suicide. She left a handwritten suicide note in which she took responsibility for loading illegal pornography

onto Petitioner's computer and ordering additional pornography in an effort to punish Melissa Baker, Petitioner's current wife.

On February 12, 2008, Petitioner attempted suicide. Chesterfield County officers were again summoned to his home. Duane Logan, a firefighter and emergency medical technician ("EMT"), found Petitioner in an "altered state" and looked around the home for something that might indicate whether Petitioner had taken a drug or other chemical. Logan found a note written by Melissa Baker on top of the refrigerator. In the note, Melissa Baker confessed to child pornography crimes that were charged to Petitioner. Melissa Baker told officers she wrote the note in November 2007 because she wanted to protect Petitioner and take the blame for him. She put the note in a safe, but Petitioner removed it before attempting suicide. Petitioner's bond was revoked February 28, 2008.

b.   Procedural Posture

A federal grand jury returned an indictment on November 7, 2007, charging Petitioner with possession of child pornography. Petitioner filed a motion to suppress January 25, 2008, seeking the suppression of evidence seized during the search of his home. The Court denied the motion after a hearing on April 29, 2008.

A federal grand jury returned a one-count superseding indictment against Petitioner on July 16, 2008, charging him with possession of child pornography.  The Court held a pre-trial motions hearing July 21, 2008. The Government sought the admission of certain evidence under Rule 404(b) of the Federal Rules of Evidence. Specifically, the Government argued for the admission of uncharged images of child pornography, sexually explicit newsgroup folders and images, file names in Petitioner's computer's Real Player history, and file names and locations from Petitioner's computer's INFO2 records. The Government

also sought pre-trial rulings on the admissibility of the confession notes written by Marianne Baker and Melissa Baker and a ruling permitting it to compel the testimony of Melissa Baker.  Petitioner moved the Court to exclude the titles of videos listed in the emails between himself and Suboyu. The Court allowed the admission of the confession notes, granted the Government's motion to compel Melissa Baker's testimony after finding it was not precluded by any marital privilege, and allowed the admission of the evidence requested, with the exception of the newsgroup links and associated images. The Court construed Petitioner's request as a motion *in limine* and denied it.

At trial, the Government called Michael Ablezer ("Ablezer"), a USPS forensic examiner who examined Petitioner's seized computers. Ablezer recovered 400 images depicting children as subjects, 135 of which were sexually explicit. Ablezer identified eight images that matched the names of the images charged in the superseding indictment.

A jury convicted Petitioner on July 23, 2008, of possession of child pornography. This Court sentenced Petitioner to a prison term of 108 months. Petitioner appealed the Court's admission of evidence of his uncharged images of child pornography. Finding no error, the Court of Appeals for the Fourth Circuit affirmed.

## II.    LEGAL STANDARD

Title 28 of the United States Code, section 2255, provides a prisoner sentenced by a federal court with a procedural vehicle to challenge the constitutional and jurisdictional validity of his sentence. Under the statute, a prisoner in federal custody may attack his sentence on grounds that: (1) the sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral

attack. 28 U.S.C. § 2255(a). To prevail under § 2255, the movant must show by a preponderance of the evidence that he is entitled to relief. <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958); <u>United States v. King</u>, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999).

### III.    DISCUSSION

#### a.   Ineffective Assistance Counsel

The Sixth Amendment provides a person charged with a crime is entitled to effective representation, <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984), at every "critical stage" of the proceedings against him, <u>Kirby v. Illinois</u>, 406 U.S. 682, 690 (1972). In considering a petitioner's claim that his Sixth Amendment rights were violated due to ineffective assistance of counsel, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. <u>See also</u> <u>United States v. Dyess</u>, 478 F.3d 224, 238 (4th Cir. 2007) (stating attorneys are presumed to have "rendered objectively effective performance").

A petitioner who alleges ineffective assistance of counsel must prove (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. To satisfy the first prong of the test, the petitioner "'must show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" <u>Lewis v. Wheeler</u>, 609 F.3d 291, 301 (4th Cir. 2010) (quoting <u>Strickland</u>, 466 U.S. at 688). To satisfy the prejudice requirement, the petitioner must show counsel's errors were serious enough to deprive the petitioner of a fair trial. <u>Strickland</u>, 466 U.S. at 687. In other words, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." Id. at 694. If it is clear the petitioner has not satisfied one prong, a court need not inquire into whether he satisfied the other. Id. at 697.

A criminal defendant has a right to effective assistance of counsel on direct appeal. Evitts v. Lucey, 469 U.S. 387 (1985). To establish ineffective assistance of appellate counsel, a petitioner must demonstrate deficiency and prejudice, as required by Strickland. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000); Hudson v. Hunt, 235 F.3d 892, 895 (4th Cir. 2000). Appellate counsel is under no obligation to raise all non-frivolous issues on appeal. Smith v. Murray, 477 U.S. 527, 536 (1986) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (internal quotation marks omitted). To the contrary, appellate counsel is charged with reviewing the record and "selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983).  To overcome the presumption of effective assistance of appellate counsel, petitioner must demonstrate that ignored issues were clearly stronger than those presented.  Jarvis, 236 F.3d at 164.

"When no merit is found in a claim of ineffective assistance of trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal." Brooks v. United States, No. 3:02-0092, 2011 U.S. Dist. LEXIS 28400, at *39 (S.D. W. Va. Feb. 15, 2011) (citing United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995)).

Each of Petitioner's eight grounds for relief alleges ineffective assistance of counsel. Petitioner argues counsel were ineffective at trial and sentencing because they did not object to certain rulings made by this Court. Petitioner claims he never communicated with appellate counsel after the notice of appeal was filed. Petitioner states he and his wife tried to call counsel, but were unable to reach him. Petitioner also states he wrote several letters

to his lawyer, but did not receive a reply. Consequently, Petitioner states he had no input as to the issues raised on appeal. Petitioner thought counsel should have appealed many issues in addition to the one actually raised, but was unable to contact counsel regarding the appeal. He therefore believes his appellate counsel was ineffective.

The Government maintains Petitioner has not shown ineffective assistance of counsel at trial, sentencing, or on appeal. The Government states Petitioner has not met the Strickland requirements with respect to claims B, D, E, F, and H, all of which allege ineffective assistance of counsel at trial or sentencing.

The Government concedes counsel's failure to file an appeal after being instructed to do so would be *per se* ineffective, Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000), but states Petitioner makes no claim that he instructed counsel to appeal the contested issues. Nor does Petitioner allege appellate counsel failed to consult Petitioner regarding an appeal, despite a constitutional duty to do so. See id. at 477-78. The Government argues it is obvious that appellate counsel consulted Petitioner about taking an appeal and filed a notice of appeal. Because Petitioner does not attempt to show he "reasonably demonstrated . . . he was interested in appealing" other issues, id. at 480, or that he instructed counsel to appeal the errors alleged below, the Government believes counsel's failure to appeal the issues set forth in claims A, B, C, D, G, and H was not deficient.

b.  Procedural Bar

The Government urges the Court to deny claims A, B, C, D, G, and H, as they are procedurally barred. The Government states while Petitioner couches each claim under the guise of ineffective assistance of counsel, they are procedurally barred because they were not raised at trial or on direct review.

Petitioner argues his claims are not procedurally barred. He states his claims are presented as claims of ineffective assistance of counsel, which are generally limited to collateral review and not normally considered on direct appeal. To the extent the Court believes he must prove cause and prejudice to overcome a procedural bar, Petitioner maintains he can do so. He states he failed to raise the issues presented herein on appeal because his appellate counsel would not communicate with him. Petitioner states he was prejudiced because the issues were not raised on direct appeal and, thus, he was not afforded fair and meaningful review of the issues.

In collateral proceedings, a petitioner may generally not assert claims he could have raised, but failed to raise, on direct review.  Stone v. Powell, 428 U.S. 465, 478 n.10 (1976); United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009).  A petitioner is barred from raising any claim reviewable on direct appeal absent showings of (1) cause and actual prejudice or (2) actual innocence.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Landrum, 93 F.3d 122, 124-25 (4th Cir. 1996). To establish "cause" for procedural default, a petitioner must show "some objective factor external to the defense" impeded his efforts to raise the issues presented. Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). To satisfy the prejudice element, the petitioner "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494).

It is well-settled that an ineffective assistance of counsel claim can fulfill the "cause" requirement. See United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999);

United States v. Breckenridge, 93 F.3d 132, 134 n.1 (4th Cir. 1996); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995); United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993). "To establish cause for . . . default based upon ineffective assistance of counsel, [a petitioner] must show that [his] attorneys' performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." Mikalajunas, 186 F.3d at 493.

As an initial matter, the Court notes that the claims that only raise the issue of ineffective assistance of counsel – claims B, E, F, G, and H – are not procedurally barred. The Court will address the merits of these claims below.  To the extent Petitioner seeks a ruling on the errors alleged in claims A, C, and D, however, he must show that there was a denial of effective assistance of counsel and that this caused him an "actual and substantial disadvantage" to avoid procedural default. Frady, 456 U.S. at 170.

      c.   Claim A: The Court Erred in Denying Petitioner's Motion to Suppress and Appellate Counsel was Ineffective in not Challenging the Ruling on Appeal

Petitioner argues the affidavit supporting the warrant that authorized the search of his home was defective. Petitioner states the affidavit suggested the search warrant would be executed even if the controlled delivery was refused. Petitioner refused delivery but this information was not put in the affidavit. Petitioner believes this information was critically important in determining if there was probable cause for the search. Petitioner argues the magistrate should not have considered sections of the affidavit that lacked the necessary foundation. Without those sections, there was no basis for the magistrate to authorize the seizure of computer equipment at Petitioner's residence.

Petitioner next contends Aldridge's affidavit contained foundationless expert opinion that could not serve as the basis for probable cause. Petitioner contends Aldridge states in the affidavit that based on her training and experience, she knows child

pornographers almost always maintain and possess their materials in the privacy and security of their homes. Petitioner states the affidavit is insufficient because it is missing a specific example of Aldridge's personal experience proving this proposition true.

Finally, Petitioner contends the search of his computer and the documents therein implicates the First Amendment. He argues a warrant authorizing the seizure of items because of the ideas they express must describe the items with scrupulous exactitude, such that the officers executing the warrant have no discretion in determining the items to be seized. Petitioner believes the only evidence of his possession of property subject to seizure was the mention of a photograph and a videotape, neither of which had anything to do with a computer. Thus, Petitioner believes the search of his home and seizure of his computers was unconstitutionally overbroad and the Court should have suppressed the evidence.

Petitioner states defense counsel argued at the suppression hearing that, at best, the search warrant authorized a search for videos, not a search of Petitioner's computer. The Court rejected the argument and denied the motion after finding the affidavit established probable cause. The Court further found the search warrant was valid and the seizures were legal. Petitioner believes the Court abused its discretion in so finding, but appellate counsel declined to challenge the issue on appeal. Petitioner believes counsel's lack of action was unreasonable and prejudiced him.

The Government argues, in addition to being procedurally barred, Petitioner's claim must fail on the merits. The Government states the facts supporting the affidavit were not at issue during the suppression hearing. Moreover, Petitioner recycles arguments raised in his suppression motion and previously rejected by this Court. The Government maintains Petitioner offers absolutely no basis in law or fact for his claim that there is a reasonable

10

probability that the Fourth Circuit would have overturned the denial of the motion to suppress had appellate counsel raised the issue on appeal.

Petitioner's claim of Court error is procedurally barred unless he can show cause and actual prejudice. Petitioner attempts to show cause by showing ineffective assistance of counsel. A proper showing of ineffective assistance requires Petitioner to demonstrate he had a meritorious Fourth Amendment claim. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) ("[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

Petitioner first claims the affidavit is insufficient because it does not mention that he refused the delivery. This statement defies logic, considering the affidavit supporting probable cause for the search warrant was submitted to and accepted by the magistrate prior to the controlled delivery:

> Between 9:00 AM and 6:00 PM, a US Postal Inspector in an undercover capacity acting as a US mail carrier will deliver the US Express mail envelope containing the CD to "Jack Richards" [at Petitioner's address]. The Postal Inspector will ask for "Jack Richards" by name and request that he sign for the US Express Mail envelope. Once the US Express Mail envelope has been received, signed for by "Jack Richards" and taken into his residence, or delivery was refused by a person bearing resemblance to the driver's license photograph of Richards, your Affiant and other law enforcement officers will execute the search warrant.

(Affidavit in Support of Search Warrant ¶ 56, Mar. 6, 2007 (ECF No. 15-2).)

It is not plausible that the affidavit would have stated the controlled delivery was refused. Petitioner's argument is therefore meritless.

Next, Petitioner argues the affidavit could not serve as the basis for probable cause because it did not set forth specific examples of the affiant's personal knowledge. Petitioner has set forth no authority, and the Court has found none, in support of this proposition. "In assessing a search warrant application for probable cause, the magistrate judge is to 'make a practical, common sense decision whether, given all the circumstances set forth in the warrant affidavit, . . . there is a fair probability that contraband or evidence of crime will be found in a particular place.'" United States v. Djelilate, No. 98-4789, 1999 U.S. App. LEXIS 21030, at *8 (4th Cir. Sept. 3, 1999) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). There is thus no bright-line rule requiring an affiant to set forth "personal experience" in an affidavit. Without any legitimate showing that the Court's denial of the motion to suppress would likely have been overturned because the affiant did not put her personal experience in the affidavit, the Court cannot conclude that Petitioner was prejudiced by counsel's failure to file an appeal on this ground.

Petitioner's third and final claim is similarly unfounded. Petitioner claims the only evidence of possible possession of property subject to seizure was the mention of a photograph and a videotape, neither of which had anything to do with a computer. Thus, Petitioner believes the search of his home and seizure of his computers was overbroad and the Court should have suppressed the evidence seized. Contrary to Petitioner's statement, however, evidence beyond "a photograph and a videotape" supported probable cause for a search or seizure of Petitioner's computer. Other factors supporting the conclusion that Petitioner likely had child pornography on his computer include: (1) the email exchanges between Suboyu and Saboo regarding the purchase of child pornography; (2) Petitioner's participation in online groups dedicated to child pornography; and (3) Saboo's statement

"[m]y computer went down last month and I lost everything." (Affidavit in Support of Search Warrant ¶¶ 17-45.) Moreover, "[t]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). Given these facts and the affiant's knowledge that child pornographers "[o]ften retain materials in a variety of media, including VHS tapes, still images, magazines, on computer hard drives and/or CD-ROMs or floppy disks," it stands to reason that evidence of Petitioner's child pornography crimes might be found on his computer. (Affidavit in Support of Search Warrant ¶ 6.)

Petitioner's arguments as to why his motion to suppress should have succeeded are untenable. He has set forth no facts or law that permit this Court to conclude the outcome of his case would have been different had counsel appealed this Court's denial of the motion to suppress. Accordingly, Petitioner has not established cause or prejudice sufficient to overcome the procedural bar and this claim must fail.

     d.   Claim B: Trial and Appellate Counsel were Ineffective Because they Failed to Challenge Illegal Search and Seizure of Melissa Baker's Confession Note

Petitioner contends the Court should reverse his conviction because his trial counsel rendered ineffective assistance when he failed to move the Court to suppress Melissa Baker's confession note. Petitioner also argues appellate counsel was ineffective because he did not raise the issue on appeal.

Petitioner contends the note is the fruit of an illegal search. Petitioner states Logan found the note on top of a seventy-four-inch tall refrigerator and the note was semi-hidden by a cabinet above the refrigerator that left no more than four inches of space between the top of the refrigerator and the bottom of the cabinet. Petitioner argues the note was not in

plain view, as only Logan was tall enough to see it. Moreover, Petitioner argues, Logan said he was looking for a drug or chemical, and a folded piece of paper is not a drug or chemical. Thus, Petitioner contends Logan's seizing the note violated the Fourth Amendment.

Petitioner believes trial counsel's failure to raise the issue in his motion to suppress and appellate counsel's failure to raise the issue on appeal were objectively unreasonable. He argues that had the issue been raised in the suppression motion, there is a reasonable probability that the Court would have ruled the note was inadmissible at trial. Moreover, without Melissa Baker's note, Marianne Baker's note would likely have raised a reasonable doubt as to whether Petitioner possessed the child pornography. Petitioner concludes there is thus a reasonable probability that the jury would have acquitted him.

The Government argues this claim fails because it is based on a misrepresentation of evidence and an unsupported allegation of an illegal seizure. The Government states Logan testified at trial that he was a Chesterfield County EMT. Logan also testified that he responded to Petitioner's home because of a reported suicide attempt and, while there, saw the note on top of the refrigerator, in plain view. The Government argues Petitioner wholly failed to state any grounds for his contention that the note was illegally seized.

Absent a meritorious Fourth Amendment claim, a petitioner cannot prove prejudice as required by Strickland. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). See also United States v. Bland, No. 93-6849, 1994 U.S. App. LEXIS 11775, at *3 (4th Cir. May 23, 1994). Petitioner has set forth no facts or evidence that permit the Court to conclude he had a meritorious Fourth Amendment claim.

Law enforcement may enter a home without a search warrant under exigent circumstances. "An officer may enter the home if 'the exigencies of the situation make the

needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" United States v. Taylor, 624 F.3d 626, 631 (4th Cir. 2010) (quoting Mincey v. Arizona, 437 U.S. 385, 394 (1978)). Moreover, officers "[m]ay seize any evidence that is in plain view during the course of their legitimate emergency activities." Mincey, 437 U.S. at 393. In the case of firefighters responding to a reported fire, for example, "[i]f the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional." Michigan v. Tyler, 436 U.S. 499, 510 (1978).

Police officers, firefighters, and EMTs responded to a call regarding an attempted suicide attempt at Petitioner's home. Petitioner admits Logan found the note while looking around the home for something that might indicate Petitioner had taken drugs or other chemicals. Logan found a note in plain view on top of the refrigerator. Logan's initial entry was undoubtedly justified, as he was responding to a call regarding an attempted suicide. His looking around the premises to locate anything related to the suicide attempt was therefore also constitutional. It follows that Logan's seizing the handwritten note was not outside the exigencies that justified his initial entry, and Petitioner's Fourth Amendment claim would have failed if it had been raised. Consequently, the claim of ineffective assistance of counsel fails here.

    e.   Claim C: The Court Erred in not Granting the Adverse-Testimony Marital Privilege and Appellate Counsel was Ineffective in not Appealing the Issue

Petitioner next contends the Court abused its discretion when it permitted Melissa Baker to testify after the marital communications testimony privilege was asserted. Petitioner contends the Government's argument that the adverse-testimony privilege did not apply because the joint-participant-in-crime exception overrode the privilege was

erroneous. Petitioner believes that, for the joint-participant-in-crime exception to apply, the Government was required to demonstrate Melissa Baker wrote the note and was a participant in the crime with Petitioner. Petitioner contends the argument that Melissa Baker wrote the note with some participation by Petitioner involves a leap of faith, as Melissa Baker was never charged with a crime. Moreover, there is no evidence that Melissa Baker attempted to publish the note. Petitioner believes without publication, Melissa Baker did not obstruct justice. Petitioner believes there was thus no evidence of joint participation in a crime and, consequently, the exception did not apply.

Petitioner contends Melissa Baker's testimony was highly prejudicial and damaging to him because his credibility was severely compromised and Marianne Baker's death confession note became moot because of the prejudice of Melissa Baker's testimony. Petitioner believes, absent Melissa Baker's testimony, Marianne Baker's confession note would have made it unlikely that a jury would have convicted him. Petitioner further believes had his appellate counsel raised this issue on appeal, there is a reasonable probability that his case would have been reversed.

The Government argues, in addition to being procedurally barred, this claim must fail on the merits. The Government states this Court correctly found the adverse-testimony privilege did not apply in this case. The Fourth Circuit has held the adverse-testimony privilege may not be used if spouses are joint participants in a crime. Thus, the joint-participant-in-crime exception applies to override any adverse-testimony privilege that may have existed. The Government therefore believes this Court did not err when it declined to allow Melissa Baker to raise the adverse-testimony marital privilege.

To the extent Petitioner seeks a ruling on his claim that the Court erred in not granting the adverse-testimony marital privilege, he is barred from doing so unless he can establish cause and prejudice for his failure to raise the issue on direct appeal. Petitioner appears to argue the ineffective assistance of his appellate counsel is the cause for his procedural default. Petitioner has not, however, shown that appellate counsel's failure to raise this issue on appeal fell below an objective standard of reasonableness. Nor has Petitioner even attempted to show that this issue was more meritorious or had a better chance at succeeding than the issue raised on appeal. Moreover, Petitioner has not demonstrated counsel's failure to raise the issue worked to Petitioner's actual disadvantage and has, thus, not shown he was prejudiced by counsel's alleged ineffectiveness. Petitioner simply speculates that, without Melissa Baker's testimony, the Court would have acquitted him because Marianne Baker's suicide note raised a reasonable doubt as to his guilt. This argument is insufficient to show counsel performed deficiently and prejudiced Petitioner by failing to raise the issue of Melissa Baker's testifying on appeal. Petitioner has thus not overcome the procedural bar and the Court will not consider his argument regarding error.

      f.   Claim D: The Court Erred in Denying Petitioner's Motion *in Limine* and Trial and Appellate Counsel were Ineffective in Failing to Object to the Ruling and Raise the Issue on Appeal

Trial counsel raised the issue of email exchanges between Suboyu and someone at Petitioner's computer, but the Court rejected his argument. Suboyu's emails listed videos he was prepared to "sell" Petitioner. Petitioner states the Government made up titles that were inflammatory and highly prejudicial to his cause. Because the Government intended to offer some of the emails into evidence, defense counsel requested that the Court exclude

the videos with the explicit titles. The Court construed the request as a motion *in limine* and denied it. Petitioner believes the Court abused its discretion in allowing the admission of the video titles and trial counsel rendered in effective assistance when he failed to object to the ruling. Petitioner further believes appellate counsel's performance fell below an objectively reasonable standard when he failed to raise the issue on appeal.

The Government argues this claim is procedurally barred and fails on the merits.

A court can exclude otherwise relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice[.]" Fed. R. Evid. 403. "A court does not abuse its discretion by refusing to exclude such evidence, however, unless there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." United States v. Forrest, 429 F.3d 73, 79-80 (4th Cir. 2005) (internal quotation marks omitted).

Petitioner has not shown that his trial counsel rendered ineffective assistance in failing to object to the Court's denying the motion *in limine*. Petitioner contends the video titles were "highly inflammatory and prejudicial," but does not argue he would have been acquitted had the emails containing the video titles not been entered into evidence. Petitioner has not demonstrated to the Court's satisfaction that counsel's performance fell below an objective standard of reasonableness. Moreover, he has not shown he was prejudiced by either trial counsel's failure to object, thereby preserving the issue for appeal, or appellate counsel's failure to raise the issue on appeal, as he has not shown either error worked to his disadvantage. Petitioner simply claims the Court was wrong in its ruling because the videos were graphic, gross, inflammatory and prejudicial, and states

the issue should have been appealed.  Because Petitioner has not demonstrated ineffective assistance is the cause for his procedural default or actual prejudice, his claim is barred.

      g.   Claim E: Trial Counsel was Ineffective Because he Prevented Petitioner from Testifying at Trial

Petitioner contends trial counsel was ineffective because he deprived Petitioner of his right to testify at trial. Petitioner believes this performance was objectively unreasonable and Petitioner lost out on a fundamental constitutional right as a result.

Petitioner states he told counsel he wanted to testify because he felt counsel had not presented any viable defenses to the crime charged. Unbeknownst to Petitioner, however, his lawyer made a deal with the Government whereby the Government agreed to not have inmates from the county jail testify against Petitioner if Petitioner agreed not to testify. Petitioner claims he was not aware of the deal and when he told his attorney he wanted to testify, his attorney would not let him.

The Government argues that, while Petitioner summarily alleges trial counsel did not allow him to testify at trial, he fails to clearly assert that his lawyer counseled him against testifying or provide details as to how counsel prevented him from testifying. Moreover, the Government does not believe Petitioner has shown how this purportedly deficient performance prejudiced him.

The Government states Petitioner's claim that his lawyer made a deal with the Government whereby Petitioner would refrain from testifying if the Government agreed not to call two inmate witnesses is ludicrous. For purposes of rebuttal, the Government had two cooperating inmates who were housed with Petitioner pending trial. The witnesses were prepared to testify that Petitioner attempted to elicit perjured testimony from one inmate in an attempt to discredit the other inmate, to whom Petitioner had previously

made inculpatory admissions concerning the offense of conviction. The Government was also prepared to elicit testimony from one of the inmates that Petitioner attempted to discourage him from testifying by telling him he would "be sorry" if he did. After learning about the Government's rebuttal witnesses and their prospective testimony, trial counsel made the strategic decision to not have Petitioner testify, which would have opened the door to the rebuttal testimony. The Government argues this decision was objectively reasonable and should be considered sound strategy.

Trial counsel is responsible for counseling the defendant as to his right to testify and any "tactical implications of doing so[.]" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). "[T]o prove ineffective assistance of counsel based on his claim that his attorney prevented him from exercising his right to testify . . . [a petitioner] must show both that his attorney violated his right to testify and that his testimony had a 'reasonable probability' of changing the outcome." United States v. Rashaad, 249 F. App'x 972, 973 (4th Cir. 2007).

Petitioner has set forth nothing more than a conclusory statement that his attorney would not allow him to testify after making a deal with the Government. He does not even attempt to demonstrate how counsel prevented him from testifying. Moreover, the facts submitted do not permit the Court to conclude Petitioner's testimony had a reasonable probability of changing the outcome of his trial. Petitioner wanted to testify because he believed counsel had not presented viable defenses to his crime. Presumably, Petitioner planned to set forth these defenses during his testimony. Petitioner's mere speculation that the outcome of his trial would have been different had he taken the stand, however, is not sufficient to establish a reasonable probability that the outcome of his trial would be different. Consequently, this claim must fail.

h. Claim F: Trial Counsel was Ineffective Because he did not File a Rule 33 Motion for New Trial

Petitioner contends that, based on the errors set forth in his first five claims, defense counsel should have filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Petitioner believes the Court would have granted a new trial if presented with these issues and states counsel missed out on "a golden opportunity." Petitioner argues he was prejudiced as a result. Petitioner states that, had counsel filed a Rule 33 motion, the errors alleged would have been preserved for appellate review.

The Government argues Petitioner offers no support for his assertion that a Rule 33 motion would have succeeded. Nor does he set forth any facts or evidence that would have permitted counsel to file a Rule 33 motion. Finally, Petitioner does not state he instructed his counsel to file such a motion. The Government believes trial counsel wisely declined to raise the challenges presented herein, as they were facially untenable then, as they are now. Petitioner has thus not shown counsel was deficient in failing to file a Rule 33 motion.

Petitioner sets forth little more than a conclusory statement that counsel was deficient because he missed out on a "golden opportunity" when he failed to file a Rule 33 motion. This is not enough to show counsel was deficient. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Moreover, Petitioner has not shown the outcome of his proceedings would have been different had counsel filed a Rule 33 motion based on the arguments Petitioner now presents for the Court's consideration. The Court rejects each of Petitioner's arguments on collateral review. There is thus no basis for concluding a motion for a new trial based on the same rejected arguments would have succeeded. Consequently, Petitioner has not shown deficiency or prejudice and this claim must fail.

i.  <u>Claim G: Appellate Counsel was Ineffective Because he did not Challenge the Five-Level Enhancement for "Pattern of Activity"</u>

Petitioner believes the five-point sentencing enhancement for "pattern of activity" was not applicable to him. Petitioner argues his offense level should not have been increased by five-levels because his criminal history shows no pattern of activity. Petitioner argues his previous crimes did not rise to a level sufficient to invoke the enhancement. His "first case" was more than fifteen years old and involved three separate counts that Petitioner believes should have been grouped as one case. His "second case" had three counts – soliciting child pornography, contributing to the delinquency of a minor, and assault. Petitioner states the Government dismissed the first two counts and the third had nothing to do with sexual contact. Thus, Petitioner believes his criminal history does not show a pattern of activity. Moreover, while the Government had witnesses testify about events for which Petitioner was not charged, the Sentencing Guidelines refer only to prior charged offenses in determining a pattern of activity. Thus, Petitioner believes there was no pattern of activity. Because appellate counsel failed to raise this issue on appeal, Petitioner believes his performance was objectively unreasonable and Petitioner was prejudiced.

The Government argues this claim should be rejected because sentencing counsel made timely objections to the presentence report regarding the pattern of sexual activity sentencing enhancement. The Court rejected counsel's argument, but the record shows sentencing counsel effectively advocated on Petitioner's behalf by making a timely, reasonable objection to the presentence report. Thus, counsel's actions were effective notwithstanding their lack of success before this Court.

The Court notes Petitioner's claim pertains to alleged ineffective assistance at the appellate phase and therefore does not address the effectiveness, or lack thereof, of counsel

at sentencing. Section 2G2.2(b)(5) of the United States Sentencing Guidelines provides "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." A defendant engages in a "pattern of activity involving the sexual abuse or exploitation of a minor" if he engages in "two or more separate instances of the sexual abuse or sexual exploitation of a minor . . . whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2, app. n. 1.

The Government's evidence at sentencing and Petitioner's presentence report showed Petitioner engaged in an ongoing sexual relationship with a fifteen-year-old minor for several weeks in 1985, when Petitioner was thirty-three years old. Petitioner and the minor had sexual intercourse on two or more separate occasions. The Government's evidence further showed Petitioner showed a sixteen-year-old girl a nude painting of another minor in 1996. Petitioner said he was the artist and asked the minor if she would allow him to paint her in the nude. He also inquired about her sex life.

Petitioner has not shown he was prejudiced by appellate counsel's failure to raise this issue on appeal. Petitioner contends his "first case" is more than fifteen years old and, while it involved three separate counts, those counts should count only as one case. With respect to his "second case," Petitioner states the counts involving possible sexual abuse or exploitation of a child – the counts for soliciting child pornography and contributing to the delinquency of a minor – were dismissed. Petitioner apparently fails to recognize that application of U.S.S.G. § 2G2.2(b)(5) is not contingent upon a conviction for the conduct. Moreover, Petitioner's argument that his "unsavory and offensive" conduct should not be considered part of a pattern of activity is unavailing. Even if his "first case" is considered

one event for purposes of applying the enhancement, he has still shown a pattern of activity, as he has admittedly engaged in "two or more separate instances of the sexual abuse or sexual exploitation of a minor" – at least once in 1985 and at least once in 1996. Petitioner does not even allege this issue was stronger than the one counsel presented on appeal and has not shown he was prejudiced by counsel's failure to raise the issue on appeal. Consequently, this claim cannot succeed.

j.   <u>Claim H: Sentencing Counsel was Ineffective Because he did not Object to the Two-Level Enhancement for Number of Images; Appellate Counsel was Ineffective Because he did not Raise the Issue on Appeal</u>

Petitioner states he should not have received two additional offense levels because of the number of images involved in his offense. Petitioner states the superseding indictment charges him with eight images. Because there was no specific verdict form to allow the jury to determine the exact number of images in the offense, Petitioner believes he should only be held accountable for eight images and, thus, the two-level enhancement for an offense involving between ten and 150 images should not apply. Petitioner argues sentencing counsel was ineffective because he failed to object to the number of images and appellate counsel was ineffective because he did not raise the issue on appeal. Petitioner believes the actions of both lawyers prejudiced him.

The Government contends this claim should fail because Sentencing Guidelines factors that do not increase a defendant's sentence beyond the statutory maximum need not be found by a jury. Moreover, the evidence presented at trial established that Ablezer recovered from Petitioner's computer approximately 400 images depicting child subjects, along with the corresponding file names. Ablezer testified that 135 of the images depicted children in sexually explicit activities or in sexually explicit poses, and the remaining

images were of naked or partially naked children. Eight of the 135 explicit images were charged in the superseding indictment and published to the jury at trial. The Government therefore argues this Court's finding that Petitioner possessed at least ten, but less than 150, images was supported by at least a preponderance of the evidence. Counsel's decision not to pursue a frivolous objection was not deficient and did not prejudice Petitioner.

Section 2G2.2(b)(7) of the United States Sentencing Guidelines provides a defendant convicted of an offense involving child pornography shall receive a two-point increase in offense level if the offense involved at least ten images but fewer than 150 images.

"The Government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence." United States v. Scher, 389 F. App'x 274, 276 (4th Cir. 2010) (citing United States v. Milam, 443 F.3d 382, 386 (4th Cir. 2006)). The evidence presented at trial clearly supports the conclusion that Petitioner's offense involved between ten and 150 images. Any objection by sentencing counsel would have been meritless. Petitioner has therefore not shown the outcome of his sentencing hearing would have been different had counsel objected to the two-point increase and has not shown prejudice. It follows that Petitioner has not shown appellate counsel was ineffective because he failed to raise the issue on appeal. Consequently, this claim must fail.

## IV. CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability should issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Specifically, the petitioner must show "jurists of reason would find it debatable whether the petition states

a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The Supreme Court has held "[a] claim can be debatable even though every jurist of reason might agree . . . that petitioner will not prevail." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003). In recognition of this permissive standard, the Court will issue a certificate of appealability although the record in this case clearly refutes Petitioner's claims of ineffective assistance of counsel.

## V.     CONCLUSION

For the reasons stated above, the Court finds Petitioner has not made an adequate showing of ineffective assistance of counsel. Accordingly, the Court DENIES the Motion without an evidentiary hearing. The Court will, however, issue a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this   29th    day of August, 2011.